UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JENNIFER M., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 4:24 CV 1712 JMB |
| | ) |
| FRANK J. BISIGNANO, | ) |
| Commissioner of Social Security | ) |
| Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

On November 10, 2022, Plaintiff Jennifer M. applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1385. Plaintiff alleges she became disabled on October 1, 2020, due to major depressive disorder, anxiety disorder, social phobia disorder, and severe acid reflux. (Tr. 14, 51, 52, 223). Plaintiff's claims were ultimately denied by the Commissioner of Social Security through the administrative process, and there is no dispute that she has exhausted her administrative remedies. See 42 U.S.C. § 405(g). Accordingly, this matter is before the Court for review of an adverse ruling by the Social Security Administration as set forth by the Administrative Law Judge ("ALJ") on January 4, 2024. (Tr. 14-23). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. Standard of Review and Legal Framework

The Court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Ross v. O'Malley, 92 F.4th 775, 778 (8th Cir. 2024). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." Juszczyk v. Astrue, 542 F.3d 626, 631 (8th Cir. 2008) (quotation omitted); see also Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (the standard "is not high"). In making this determination, the Court considers evidence that both supports and detracts from the ALJ's decision. Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007); see also 20 C.F.R. § 404.1520 (setting forth the five-step sequential evaluation process an ALJ uses in determining whether a claimant is disabled); Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (discussing the five-step process).

The Eighth Circuit has repeatedly emphasized that a district court's review of an ALJ's disability determination is intended to be narrow, and that courts should "defer heavily to the findings and conclusions of the Social Security Administration." Hurd v. Astrue, 621 F.3d 734, 738 (8th Cir. 2010) (citing Howard v. Massanari, 255 F.3d 577, 581 (8th Cir. 2001)). Similarly, a reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). If it is possible to draw a position from the evidence that supports the ALJ's findings, the reviewing court must affirm the decision. Id. With this standard in mind, the Court will address the specific arguments made by the parties.

## II. Discussion

On appeal, Plaintiff argues that the ALJ's residual functional capacity ("RFC") assessment is not supported by substantial evidence because the ALJ failed to properly evaluate the medical

opinion of Dr. Eileen Wu-Evans, Plaintiff's treating psychiatrist. (Doc. 11). The Commissioner responds that the ALJ complied with agency regulations, and that substantial evidence on the record as a whole supports the ALJ's decision. (Doc. 12).

A claimant's RFC is the most she can do in a work setting despite her limitations. Schmitt v. Kijakazi, 27 F.4th 1353, 1360 (8th Cir. 2022) (citing 20 C.F.R. § 404.1545(a)(1)). "The Commissioner must determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." Hensley v. Colvin, 829 F.3d 926, 931-32 (8th Cir. 2016) (citation omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." Id. at 932 (quotation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." Id. (citation omitted). "In evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively." Schmitt, 27 F.4th at 1360 (quotation and citation omitted). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Id.

Claims filed after March 27, 2017, like Plaintiff's, require an ALJ to evaluate medical opinions pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. These provisions state that the Social Security Administration "will not defer or give any specific evidentiary weight" to any medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, an ALJ is required to evaluate, among other factors, the persuasiveness of any opinion or prior administrative medical finding by considering the supportability of the opinion with relevant objective medical evidence and supporting explanations, as well as the consistency with the evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. §§

404.1520c(b)-(d), 416.920c(b)-(d).  "The rules make clear that supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision."  Lerchaichanakul v. Kijakazi, No. 4:22-CV-1002 SRW, 2023 WL 5128207, at *3 (E.D. Mo. Aug. 10, 2023) (citing 20 C.F.R. § 404.1520c(b)(2)).  "An ALJ may, but is not required to, explain how he or she considered the remaining factors."  Id. (citations omitted).  The ALJ's reasoning, however, needs to be "clear enough to allow for appropriate judicial review."  Gridnley v. Kijakazi, 9 F.4th 622, 631 (8th Cir. 2021) (quotation omitted).

On November 1, 2023, Dr. Wu-Evans completed a Mental Medical Source Statement ("MSS") on Plaintiff's behalf.[2]  In the MSS, Dr. Wu-Evans indicated that she began treating Plaintiff in October 2022, and that she had diagnosed Plaintiff with major depressive disorder and social anxiety, for which she had prescribed Prozac and Abilify.  (Tr. 990).  Dr. Wu-Evans listed the following clinical findings as demonstrative of the severity of Plaintiff's mental impairments and symptoms: inability to focus, irrational fear, severe anxiety, difficulty making decisions, negative ruminations, feelings of hopelessness and worthlessness, lack of energy, and lack of motivation.  Id.  Dr. Wu-Evans stated her prognosis was "guarded."  Id.  Dr. Wu-Evans identified Plaintiff's signs and symptoms in check-box format, selecting "memory impairment," "intense and unstable interpersonal relationships and impulsive and damaging behavior," and "recurrent obsessions or compulsions which are a source of marked distress," among others.  (Tr. 991).

In the MSS, Dr. Wu-Evans also evaluated in check-box format how Plaintiff's impairments affect her mental abilities, as well as her aptitude to do unskilled work.  Dr. Wu-

---

[2] Dr. Wu-Evans also drafted a "letter" dated October 24, 2022, in which she stated generally that Plaintiff "is not able to work at this time." (Tr. 483).  The ALJ concluded that the October 2022 letter did not constitute a medical opinion (Tr. 21), and Plaintiff assigns no error to this conclusion.

Evans indicated that Plaintiff has marked limitations[3] in her abilities to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; adapt or manage oneself; remember work-like procedures; understand and remember very short and simple instructions; maintain attention for two-hour segment; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes; and be aware of normal hazards and take appropriate precautions. (Tr. 992). Dr. Wu-Evans indicated that Plaintiff has extreme limitations[4] in her abilities to maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruption from psychologically based symptoms; respond appropriately to changes in a routine work setting; and deal with normal work stress. (Tr. 992-93). Dr. Wu-Evans further indicated that Plaintiff would find several demands of work stressful, including exercising independent judgment, working with other people, dealing with the public, and being criticized by supervisors, and that she would anticipate Plaintiff being absent from work more than four days per month. (Tr. 994). In response to the MSS form prompts directing the medical provider to explain the opined limitations and to include "reference to

---

[3] "Marked" means a "patient's functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited (11 to 20 percent of the workday or work week)." (Tr. 992).

[4] "Extreme" means a "patient is not able to function in this area independently, appropriately, effectively, and on a sustained basis (greater than 20 percent of the workday or work week)." (Tr. 992).

"medical/clinical findings," Dr. Wu-Evans summarily stated: "[h]as not been able to work for a number of years," and "[h]as not been functioning for a few years." (Tr. 993).

As relevant, state agency psychological consultants, Dr. Charles Watson and Dr. Scott Brandhorst, had previously completed evaluations of Plaintiff's mental impairments and functional limitations. In December 2022, Dr. Watson had opined that Plaintiff has no more than moderate limitations; that she retains the ability to understand and remember simple instruction; that she can carry out simple work instruction, maintain adequate attendance, and sustain an ordinary routine without special supervision; that she can interact adequately with peers and supervisors but would do best in a setting with limited interpersonal demands; and that she can adapt to most usual changes common to a competitive work setting. (Tr. 63-65). In April 2023, Dr. Brandhorst had opined that Plaintiff has no more than moderate limitations, that she is capable of sustained simple work, and that she would be recommended for a simple work vocation with limited social interaction to reduce her stress levels. (Tr. 73-76).

In determining Plaintiff's RFC, the ALJ found Dr. Wu-Evans' opinion to be unpersuasive. The ALJ reasoned that Dr. Wu-Evans did not support the assessment with specific reference to her treating records, and that the assessment was inconsistent with multiple mental status evaluations she had completed in 2023 "which routinely reveal that [Plaintiff's] attention, concentration, knowledge, and memory are fair." (Tr. 21). In the mental status evaluations cited by the ALJ, Dr. Wu-Evans' had documented findings that Plaintiff presented as cooperative, with no psycho abnormalities; that she was alert and oriented x 3; and that her attention, concentration, memory, insight, judgment, and knowledge were "fair." (Tr. 21, 870, 875-76, 880-81, 885-86). The ALJ further found Dr. Wu-Evans' opinion to be inconsistent with the prior administrative medical findings of Dr. Watson and Dr. Brandhorst, which the ALJ had previously determined were

persuasive. (Tr. 21). The ALJ ultimately assessed the following RFC: "[Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is able to perform simple, routine and repetitive tasks but not at a production rate pace. She is able to interact with supervisors, coworkers, and with the public occasionally. Additionally, she is able to make simple work-related decisions." (Tr. 18).

Plaintiff asserts that the ALJ "did not specifically identify how persuasive (or not) he found Dr. Wu-Evans' opinion," and that he "did not mention supportability." (Doc. 11 at 12). Plaintiff argues that Dr. Wu-Evans' opinion includes details regarding Plaintiff's treatment frequency, diagnoses, response to treatment, and clinical findings, all of which she contends support the marked limitations proffered by Dr. Wu-Evans. Plaintiff also argues that her treating relationship with Dr. Wu-Evans—namely, the length of treatment and frequency of examination—weighs in favor of crediting the opinion. Id. at 12-13.

Contrary to Plaintiff's argument, the Court finds that the ALJ properly articulated supportability and consistency in analyzing the persuasiveness of Dr. Wu-Evans' opinion. The ALJ initially stated that he had considered the medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. §§ 404.1520c and 416.920c. (Tr. 18). With respect to Dr. Wu-Evans' opinion, the ALJ noted her failure to support her opinion with specific reference to her treating records. The ALJ also found her assessments of Plaintiff's functional limitations inconsistent with her mental status evaluation findings from 2023. The ALJ further found the opinion inconsistent with the prior administrative medical findings, which the ALJ had discussed in detail in the preceding paragraphs and found to be persuasive. See Starman v. Kijakazi, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (in articulating how they considered the supportability factor, ALJs may note that "the physician's

Page 7 of 10

own treatment notes do not support the physician's opinion," or that "the physician did or did not provide a detailed explanation for the opinion") (collecting cases); see also Adkins v. Comm'r, Soc. Sec. Admin., 911 F.3d 547, 550 (8th Cir. 2018) ("We have often noted that the MSS form consists of a series of check marks assessing residual functional capacity, a determination the ALJ must make, which are conclusory opinions that may be discounted if contradicted by other objective medical evidence in the record."). The Court finds the ALJ's analyses of supportability and consistency sufficient here to allow for "meaningful assessment" of Plaintiff's challenge to the ALJ's evaluation of the persuasiveness of Dr. Wu-Evans' medical opinion. Hirner v. Saul, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022).

To the extent Plaintiff argues that the ALJ erred in failing to address issues related to Dr. Wu-Evans' relationship with Plaintiff (i.e., the length of treatment and the frequency of examination), the Court notes that an ALJ is not required to discuss the medical source's relationship with the claimant. See Mudge v. Saul, No. 4:18 CV 693 CDP, 2019 WL 3412616, at *4 (E.D. Mo. July 29, 2019) ("Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness.") (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

Plaintiff further argues that the ALJ improperly relied on the prior administrative medical findings because those opinions preceded that of Dr. Wu-Evans, and because it appears neither source reviewed Dr. Wu-Evans' treatment notes. However, an ALJ may make an RFC finding consistent with prior administrative medical findings despite the fact that they were rendered earlier in the administrative process, where, as here, the ALJ evaluates the reliability of the earlier medical opinions in light of the updated clinical findings. See Jones v. Kijakazi, No. 1:23-CV-

00016-SNLJ, 2024 WL 3509498, at *4 (E.D. Mo. July 23, 2024) (rejecting the plaintiff's argument that the earlier medical opinions were "stale," and emphasizing the ALJ's duty to consider "all relevant evidence in the record"; "the earlier medical opinions, though insufficient insofar as they do not account for the entirety of plaintiff's medical situation, nonetheless are relevant and valuable data points for determining plaintiff's RFC"); see also Walker v. Kijakazi, No. 6:21-CV-3235-NKL, 2022 WL 3036639, at *6 (W.D. Mo. Aug. 1, 2022) ("[A]n ALJ can rely on the opinion of a state agency medical consultant who did not have access to all the records, so long as the ALJ conducts an independent review of the evidence and takes into account portions of the record the consultant had not considered.").

Finally, it is clear from the ALJ's decision that the ALJ considered Plaintiff's activities of daily living, which according to Plaintiff's hearing testimony include providing primary care for her twin fourteen-year-old granddaughters, attending their sporting events, providing childcare for a young boy several evenings a week, visiting her father in healthcare facilities, driving, grocery shopping, preparing meals, and basic cleaning.  (Tr. 20, 35, 38, 41-44).  See Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (although activities of daily living are not sufficient on their own to prove a plaintiff can work, they can appropriately support the ALJ's decision when considered in conjunction with the medical record); see also Trosper v. Saul, No. 1:20 CV 51 DDN, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021) ("The paragraph concerning the ALJ's evaluation of [a medical provider's] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment.").  In light of the whole record, the Court cannot, without reweighing evidence, assign error to the ALJ's decision.  See Osmanovic v. Bisignano, No. 4:24-CV-00679-NCC, 2025 WL 2771473, at *2 (E.D. Mo. Sept. 29, 2025) ("It is not the job of the district court to re-weigh the evidence or review the factual record de novo.… Instead, the district

court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.").

\* \* \* \* \*

For the foregoing reasons, the Court finds that the ALJ's determination is supported by substantial evidence on the record as a whole.

Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **affirmed**.

A separate Judgment shall accompany this Memorandum and Order.


                                              */s/ John M. Bodenhausen*
                                              JOHN M. BODENHAUSEN
                                              UNITED STATES MAGISTRATE JUDGE


Dated this 22nd day of October, 2025.